## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MARIE G. BOSARGE, | : | |
| Plaintiff, | : | |
| vs. | : | CA 15-0626-C |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 18 & 19 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record and the parties' briefs,[1] it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

---

[1] At the behest of the Court, given the age of this case, the parties in this matter waived oral argument.

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 18 & 19 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Plaintiff alleges disability due to chronic obstructive pulmonary disease, hypertension, migraines, obesity, and degenerative disk disorder. The Administrative Law Judge (ALJ) made the following relevant findings:

1.     **The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.**

2.     **The claimant has not engaged in substantial gainful activity since April 30, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).**

3.     **The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD), hypertension, migraines, obesity, and degenerative disc disease (20 CFR 404.1520(c)).**

.     .     .

4.     **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

.     .     .

5.     **After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)— i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever

statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant alleges that due to her pain, nausea, dizziness, and breathing problems, she is disabled. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

In terms of the claimant's alleged physical impairments, she has received generally conservative treatment and has been medically non-compliant with her medications. The claimant's treatment records from Bayou La Batre Area Health show that the claimant received generally conservative treatment for her impairments. Treatment notes from January 2011 show that upon examination her back had unremarkable findings and her chest was clear as well. A cervical spine view from January 2011 showed moderate degenerative disc disease of the cervical spine with some spurring with similar changes in her thoracic and lumbar spine. At this visit, her COPD was assessed to be stable although her blood pressure was elevated. Specifically, treatment notes from April 2011 showed that upon examination her chest was clear. Her blood pressure was still high so she was prescribed Lisinopril along with Coreg.

In November 2012, Henrietta Kovacs, M.D. examined the claimant. Despite her COPD, the claimant continued to smoke tobacco and was assessed with tobacco abuse. She reported only getting headaches once a month. Upon examination, her lungs were clear to percussion and to auscultation and she had no wheezing or rales. She had no murmur or gallop. He back was symmetric and there was no flank tenderness. She had no edema. She had a mild limitation of the range of motion of the dorsolumbar spine on flexion and the left shoulder in abduction and forward elevation, but no limitation of range of motion in the other joints. She had a negative straight leg raise and was able to heel and toe walk and tandem [walk] without any problems. Her gait was normal as well. She was assessed with COPD, long history, long history of migraine headaches, chronic lower back pain with referred pain and numbness in her left upper arm, and hypertension.

Treatment records from the Mostellar Medical Center show that the claimant was medically non-compliant. Specifically, the claimant was assessed to have been out of her medication for a while despite her denials as of a visit in January 2014. She was recommended to take medications, including Coreg, but refused. In addition, these treatment notes stated that the claimant[] complained of back pain despite previously normal X-rays. Upon examination, her lungs were clear, she had no murmur or

gallop, her neck was non-tender, she had full motor strength in all her extremities, and no acute abnormalities were note[d] from a lumbar spine film. She was assessed with back pain, COPD, hypertension, tobacco abuse and medical noncompliance. The claimant was advised of the risk of uncontrolled hypertension in light of her medical non-compliance. She was prescribed Coreg and Lisinopril. As for her obesity, the claimant's reported height and weight of 5 feet 1 inch and weight of 168 pounds calculates to a body mass index of 31.7, which is a BMI indicating obesity and the undersigned has considered this impairment as well.

After considering the medical evidence of record, the undersigned finds that the claimant's hypertension, obesity, COPD, migraines, degenerative disc disease, and arising symptoms are accommodated by the limitation to medium work and preclusion of heavy or very heavy work.

.     .     .

In regards to the claimant's credibility, after evaluation of the medical evidence and the claimant's statements, the undersigned finds that the claimant's allegations regarding her limitations and being disabled are not wholly credible. The undersigned has considered the objective medical evidence (sign and laboratory findings); medical treatment history; medical opinions and observations; opinions of non-examining medical sources; the claimant's daily activities; the location, duration, frequency, and intensity of her symptoms; precipitating and aggravating factors; type, dosage, effectiveness and side effects of medication; treatment other than medication; other measures; consistency of statements; observations of non-medical persons; and the claimant's work history in assessing the claimant's credibility (SSR 96-7p).

The claimant's alleged disability is not wholly credible because overall her examination findings show findings within generally normal limits, particularly in light of clear lungs upon examination, X-ray evidence showing findings within normal limits despite her pain complaints, and normal gait, normal tandem walk, and normal heel to toe walk. She is not medically compliant with her blood pressure medication as prescribed by her doctor, and she uses tobacco despite her COPD. Moreover, she ran out of her COPD medication and was therefore non-compliant with taking her COPD medication. Her activities of daily living belie her allegations of disable[ity] as to her physical limitations in that she is generally able to perform personal care, wash dishes, do laundry, cook simple meals, spend time with her grandchildren, and drive. She has not received aggressive treatment for any of her impairments. The medical evidence does not establish headaches, nausea, fatigue, swelling, shortness of breath, or pain of the level and severity that would result in debilitating limitations, and her medical non-compliance suggests that her symptoms are not severe as well. Her activities of daily living are self-restricted, as no treating source has advised her to stay home all day, lie down during the day, or to restrict her activities of daily living in any manner, and instead she has

been encouraged to exercise. She has not been advised to refrain from performing all gainful work activity. She has not required recurrent emergency room visits, recent surgery for her back, prolonged physical therapy, or chronic pain management treatment.

In sum, the above residual functional capacity assessment is supported by the claimant's musculoskeletal findings generally within normal limits; generally clear lungs upon examination; X-ray evidence showing generally findings within normal limits; examination findings of normal gait, normal tandem walk, and heel and to[e] walk; the lack of consistent medical treatment for any of her impairments; the lack of any need for hospitalizations o[r] emergency room treatment for her[] severe impairments; medical non-compliance; and in the light of the variety of her activities of daily living and ability to generally perform personal care and drive.

**6.     The claimant is capable of performing past relevant work as a screen printer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**

The claimant has past relevant work as a screen printer. The term "past relevant work" means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565).

The claimant worked as a screen printer from 1994 to 2000, which was within the last 15 years. At her job in 1994 to 2000, she earned $10.00 per hour and worked 8 hours per day, 40 hours a week, which calculates to approximately $1600.00 per month. In addition, her earnings from 1999 was $17,755.00, which divided by twelve approximates to $1479.58 per month. Thus, her earnings for 1999 and while working in 2000 was over the SGA amount of at least $500 prior to July 1999, and then $700 from July 1999 through December 2000. She performed this work for more than 6 months; thus, she performed this job long enough for her to learn to do the job.

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed.

This work was classified as medium semi-skilled work with no transferable skills by the vocational expert. In addition, the undersigned notes that the Dictionary of Occupational Titles (DOT) designates screen printer helper as medium unskilled work (DOT 979.687-022) and screen printer as light semi-skilled work (DOT 979.684-034). Nevertheless, under

the vocational expert's classification accepted under SSR 00-4p, and/or in the alternative under both the DOT's classifications, the claimant would be able to return to her past relevant work as a screen printer under the above residual functional capacity of a full range of medium work.

**7.     The claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2011, through the date of this decision (20 CFR 404.1520(f)).**

(Tr. 50, 52, 53-55 & 55-56 (internal citations omitted; emphasis in original).)   The

Appeals Council affirmed the ALJ's decision (Tr. 1-4) and thus, the hearing decision

became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Soc. Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per

curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v.

Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the

burden, at the fourth step, of proving that she is unable to perform her previous work.

*Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has

met this burden, the examiner must consider the following four factors:  (1) objective

medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence

of pain; and (4) the claimant's age, education and work history.  *Id.* at 1005. Although "a

---

[3]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

claimant bears the burden of demonstrating an inability to return to h[er]  past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform her past relevant work as a screen printer, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence."  *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).  And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court]

---

[4]        This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Bosarge asserts two reasons why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ's residual functional capacity (RFC) assessment (for the full range of medium work) is not supported by substantial evidence of record because the only opinion in the file that supports such a finding is an opinion rendered by a Single Decision Maker (SDM); and (2) the ALJ failed to comply with SSR 96-7p in discrediting plaintiff for her failure to obtain treatment without first considering her explanations for lack of treatment. The Court will address each issue in turn.

A.     **Is the ALJ's RFC Determination Supported by Substantial Evidence of Record**? In her brief, plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence because the only opinion in the record supporting the ALJ's finding is that of a Single Decision Maker (Doc. 12, at 1; *see also id.* at 2-3).

Initially, the Court notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which

"includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins, supra,* 457 Fed. Appx. at 870 n.5 (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)). Here, the ALJ's RFC assessment consisted of the following: "**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).**" (Tr. 53 (emphasis in original).)

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D.Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd*, 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013)[5]; *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence

---

[5]       In affirming the ALJ, the Eleventh Circuit rejected Packer's substantial evidence argument, noting, she "failed to establish that her RFC assessment was not supported by substantial evidence[]" in light of the ALJ's consideration of her credibility and the medical evidence.  *Id.* at 892.

supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[6]

In order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at \*3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue,* 2012 WL 1565624, \*4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases— include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003). In this case, of

---

[6]    It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision.  *See, e.g., Durham v. Astrue,* 2010 WL 3825617, \*3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna,* 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at \*3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ ***could have*** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen,* 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

course, as plaintiff acknowledges (*see* Doc. 12, at 2), the record contains no RFC assessments completed by a treating or examining physician (*compare id. with* Tr. 222-233, 235-240, 242-258, 260-267 & 269-283), only an RFC assessment by P.C. Simmons, a SDM (*see* Tr. 95-96).

Importantly, in establishing Bosarge's RFC for the full range of medium work, which means determining Bosarge's "remaining ability to do work despite her impairments[,]" *Packer*, 542 Fed.Appx. at 891—keeping a focus on the extent of those impairments as documented by the credible record evidence—the ALJ walked through all the evidence of record, along with the claimant's testimony (*see* Tr. 54-55), and ultimately concluded that plaintiff's RFC assessment was properly informed by "the claimant's musculoskeletal findings generally within normal limits; generally clear lungs upon examination; X-ray evidence showing generally findings within normal limits; examination findings of normal gait, normal tandem walk, and heel and to[e] walk; the lack of consistent medical treatment for any of her impairments; the lack of any need for hospitalizations o[r] emergency room treatment for any of her impairments; medical non-compliance; and in light of the variety of her activities of daily living and ability to generally perform personal care and drive." (Tr. 56.) As previously noted, an ALJ's RFC assessment does not have to be supported by the assessment of an examining or treating physician, and in this case it was not (*see* Tr. 53-56). Moreover, in reaching his RFC assessment in this case, the ALJ made no mention of the RFC assessment of the SDM, much less accord it any weight (*see id*.). Plaintiff's suggestion that the ALJ must have accorded the SDM's opinion substantial weight, since that is the only physical RFC assessment in the record, is fundamentally flawed because it ignores clear precedent that the assessment of a claimant's RFC is solely the ALJ's responsibility and such responsibility can be satisfied without relying upon the

RFC assessment completed by a treating or examining physician. In light of this clear precedent, *see, e.g., Packer, supra,* 2013 WL 593497, at *3, it is impossible for this Court to agree with plaintiff's argument that the ALJ must have relied upon the RFC assessment of an SDM nowhere mentioned in the ALJ's decision, particularly in light of the plethora of evidence to which the ALJ cited in support of that assessment (*compare* Tr. 56 *with* Tr. 54-55 & Tr. 239-240 (negative radiographs of the cervical spine and lumbar spine); Tr. 264, 266-267 (range of motion testing reflected only mild limitation of the dorsolumbar spine on flexion and the left shoulder in abduction and forward elevation but no limitation in any of the other joints examined); Tr. 281 (physical examination revealed 5/5 motor strength in all four extremities, normal sensory exam, and LS-spine film showed no acute abnormalities)).[7] In light of the foregoing, the undersigned finds that the ALJ's RFC assessment provides an articulated linkage to the medical evidence of record. The linkage requirement is simply another way to say that, in order for this Court to find that an RFC determination is supported by substantial evidence, ALJs must "show their work" or, said somewhat differently, show *how* they applied and analyzed the evidence to determine a plaintiff's RFC.  *See, e.g., Hanna*, 395 Fed. Appx. at 636 (an ALJ's "decision [must] provide a meaningful basis upon which we can review [a plaintiff's] case"); *Ricks*, 2012 WL 1020428, at *9 (an ALJ must "explain the basis for his decision"); *Packer*, 542 Fed.Appx. at 891-892 (an ALJ must "provide *enough reasoning* for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole[]" (emphasis added)).  Thus, by "showing his work" (*see* Tr. 53-56),

---

[7]        In other words, because the medical evidence of record (*see, e.g.,* Tr. 239-240, 264, 266-267 & 281) in this case supports the ALJ's RFC determination, the ALJ obviously had no need to rely, explicitly or implicitly, upon the RFC assessment of the SDM.

the ALJ has provided the required "linkage" between the record evidence and her RFC determination necessary to facilitate this Court's meaningful review of his decision.

B.      **Did the ALJ fail to comply with SSR 96-7p in Discrediting Plaintiff due to Non-compliance with Treatment without Considering her Explanation for Non-compliance**? Plaintiff correctly points out that SSR 96-7p provides that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other evidence in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.* To this end, the ruling recognizes that an ALJ "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." *Id.*[8] Bosarge contends that the ALJ ran afoul of SSR 96-7p in this case by discrediting her due to her non-compliance in obtaining and taking her medications without first taking into consideration her ability to pay for her medications. (*See* Doc. 12, at 3.)

The undersigned finds no reversible error in this regard. A review of the transcript of the administrative hearing revealed the following exchange between the ALJ and Bosarge:

> Q      Are you able to get your medications regularly and on time like you're supposed to?
>
> A      Yes, sir.

---

[8]      Plaintiff also correctly points out that the ruling provides that one valid reason for not following treatment is as follows: "The individual may be unable to afford treatment and may not have access to free or low-cost medical services." *Id.*

13

> Q      Do you take them regularly like you're supposed to?
>
> A      Yes, sir.
>
> Q      Do they seem to help you?
>
> A      Yes, sir.

(Tr. 72.)  With this exchange, the ALJ provided an open door through which plaintiff could have walked and explained any inability to afford her prescribed medications; however, Bosarge gave no indication that she was unable to obtain her medications regularly and on time because of an inability to afford them. Accordingly, this Court declines to find that the ALJ in any manner ran afoul of SSR 96-7p in stressing, as one basis for finding plaintiff's testimony not credible, her non-compliance with prescribed medications.[9]

Because plaintiff raises no other issues and, specifically, no argument is raised that plaintiff would be unable to perform her past relevant work as a screen printer based upon a "substantially supported" RFC determination for the full range of medium work,[10] the Commissioner's fourth-step determination is due to be affirmed.[11]

---

[9]      However, even assuming error in this regard does not assist plaintiff inasmuch as such error would be harmless in light of the numerous other reasons elucidated by the ALJ for finding plaintiff's subjective complaints less than fully credible. (*See* Tr. 55 (finding plaintiff's allegations of disability not wholly credible not only because of her non-compliance with medications but also because of generally normal examination findings, her activities of daily living, the conservative nature of treatment, a lack of any indication from a treating or examining source that she should refrain from performing work activity, and the lack of recurrent visits to the emergency room, prolonged physical therapy, or chronic pain management).)

[10]      And, as noted above, this Court has already determined that the ALJ's RFC determination (for a full range of medium work) is supported by substantial evidence.

[11]      Indeed, the vocational expert testified during the administrative hearing that the range of motion findings by consultative examiner Dr. Henrietta Kovacs (Tr. 266-267) would be consistent with the ability to perform past relevant work as a screen printer (*see* Tr. 86).

*Compare Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 49 & 50 (11th Cir. Oct. 26, 2012) ("[S]tep four assesses the claimant's RFC to determine whether the claimant is capable of performing 'past relevant work.' . . . A claimant's RFC takes into account both physical and mental limitations. . . . Because more than a scintilla of evidence supported the ALJ's RFC assessment here, we will not second-guess the Commissioner's determination.") *with Phillips v. Barnhart,* 357 F.3d 1232, 1238-1239 (11th Cir. 2004) ("At the fourth step, the ALJ must assess: (1) the claimant's residual functional capacity []; and (2) the claimant's ability to return to [his] past relevant work. As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. Moreover, the ALJ will assess and make a finding about the claimant's residual functional capacity based on all the relevant medical and other evidence in the case. Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to [his] past relevant work under the fourth step; and (2) can adjust to other work under the fifth step . . . . If the claimant  can return to [his] past relevant work, the ALJ will conclude that the claimant is not disabled. If the claimant cannot return to [his] past relevant work, the ALJ moves on to step 5." (internal citations, quotation marks, and brackets omitted; brackets added)).

<u>CONCLUSION</u>

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 22nd day of December, 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**